

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-8-1995

# United States v Norman Edwards

Precedential or Non-Precedential:

Docket 93-5718

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Norman Edwards" (1995). *1995 Decisions.* Paper 125.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/125

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 93-5718


UNITED STATES OF AMERICA

V.

NORMAN EDWARDS,
                    Appellant


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF NEW JERSEY
        (D.C. Criminal No. 92-00590-3)


Argued November 30, 1994


Before:  HUTCHINSON and NYGAARD, Circuit Judges
         and GARTH, Senior Circuit Judge

(Opinion filed  May 8, 1995)


KOJI F. FUKUMURA, ESQUIRE (Argued)
GAVIN P. LENTZ, ESQUIRE
Bochetto & Lentz
1500 Market Street
East Tower, Centre Square, 14th Floor
Philadelphia, PA 19102
Attorneys for Appellant

ELIZABETH S. FERGUSON, ESQUIRE (Argued)
EDNA B. AXELROD, ESQUIRE
FAITH S. HOCHBERG, ESQUIRE
Office of United States Attorney
970 Broad Street
Room 502
Newark, NJ 07102
Attorneys for Appellee


OPINION OF THE COURT

NYGAARD, Circuit Judge.

Norman Edwards appeals from an order denying his motion to suppress evidence used to convict him for his role in credit card fraud and theft. Because we find that the evidence was obtained lawfully pursuant to Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968), we will affirm.

I.

The Fairfield Township Police broadcasted an all-points transmission reporting a credit card fraud in progress at the Midlantic Bank in Fairfield, New Jersey. While responding to the bank, Officer Crapello testified that he received a second radio message describing a red Chrysler LeBaron convertible with two occupants and New York license plate "ZPT777" as "believed to be involved or may be involved" in the suspected bank fraud.

Officer Crapello arrived at the bank approximately ninety seconds after the first message, and saw a red Chrysler LeBaron convertible in the bank parking lot bearing license plate ZPT777. As the message had described, the car had two occupants, later determined to be defendant Edwards and one Anthony Sears. The convertible top was down, and both occupants were visible.

Officer Crapello pulled his patrol car in front of the LeBaron. Officer Kane, in a second patrol car, boxed the LeBaron in from behind to prevent or inhibit an escape attempt.

Officer Crapello approached the passenger side of the LeBaron on foot, with the thumb snap of his holster released and his hand on his service revolver. Officer Kane crouched behind his patrol car door. A third patrol car arrived and Officer

Polizzi and a police dog also approached the suspects' vehicle.

When Officers Crapello and Polizzi were approximately eight feet from the car, Polizzi instructed the dog to bark. Until then, both occupants of the LeBaron appeared to be sleeping. In response to the dog's bark, Edwards lifted his head, looked around and then nudged Sears, who awoke with a start. After instructing Edwards and Sears to put their hands on the dashboard, Crapello saw a jacket on Edwards' lap. He reached in and removed the jacket. When he patted the outside of the jacket to check the pockets for weapons, Crapello detected "a large, hard, bulky object" in its inner pocket. He removed a manila envelope, folded once in half but not sealed, from the jacket. Feeling the "hard, bulky" object in the envelope, Officer Crapello unfolded it and looked inside for a weapon. Instead of a weapon, he found several credit cards and New Jersey drivers' licenses, which he determined from visual inspection to be fraudulent.

Edwards was arrested and indicted for possession and use of counterfeit credit cards. 18 U.S.C. § 1029(a). After an evidentiary hearing on Edwards' motion to suppress the evidence found in the manila envelope, the district court denied the motion. United States v. Edwards, No. 92-590, slip op. at 9 (D.N.J. June 8, 1993). Apparently finding that the officers' actions did not constitute an arrest, id. at 6-8, the district

court did not decide whether the officers had probable cause to arrest before they opened the manila envelope.

## II.

### A.  Terry Analysis

The district court held that Officer Crapello's actions in opening the envelope without a warrant were justified under Terry, supra.  A Terry stop is permissible when the police have a reasonable suspicion based on articulable facts that a crime has been committed.  Id. at 21, 88 S. Ct. at 1880-81.  Edwards does not argue that the police lacked reasonable suspicion to conduct an investigatory Terry stop.  Instead, he argues that both the subsequent Terry protective pat down and the ultimate search of the envelope were unlawful.

### 1. Reasonableness of the Frisk

First, Edwards argues that the police had no reason to believe he was armed and dangerous, and thus could not lawfully conduct a Terry protective pat down.  In Terry, the Supreme Court held that a police officer, during the course of a Terry stop, may conduct a "reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual...."  Id. at 27, 88 S. Ct. at 1883.  The test is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."  Id. (citations omitted).  Finally, in determining whether the officer acted

reasonably under the circumstances, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id. (citations omitted).

We will accept the district court's factual findings regarding the circumstances of the stop unless they are clearly erroneous, and exercise plenary review over whether these facts so found, create a reasonable inference that the suspect is dangerous and the protective frisk was reasonably calculated to discover a weapon. See United States v. Coggins, 986 F.2d 651, 654 (3d Cir. 1991).

We find no error in the district court's conclusion that Officer Crapello had reason to believe that he could be facing armed and dangerous felons. That this fraud occurred at a bank in broad daylight could lead one to believe that the perpetrators might have armed themselves to facilitate their escape if confronted. Although the radio bulletin did not describe this response as a bank robbery, it is reasonable to conclude that the suspects might use force and be armed.

### 2. The Envelope Search

Edwards also argues that, even if the pat down was reasonable, it was not reasonable to open the envelope. "The sole justification of the search in [a Terry stop] is the protection of the police officer and others nearby, and it must

therefore be confined to an intrusion, reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry, 392 U.S. at 29, 88 S. Ct. at 1884.

We agree with the district court that Officer Crapello was justified in opening the envelope. He was justifiably concerned that a small-caliber handgun might be concealed in the envelope. Upon careful examination of the evidence in the record, we conclude that the district court was well within its discretion when it decided that Officer Crapello could reasonably have believed that a weapon might be concealed in the envelope. The four-by-six inch envelope was packed full of nineteen hard plastic cards -- whether credit cards or drivers' licenses -- which the record demonstrates created the feel of a hard, bulky object. Moreover, the government presented the district court with tangible evidence that a small-caliber handgun, in its holster, fits inside the envelope and has roughly the same feel inside the envelope as did the credit cards it contained. In the hasty examination necessitated by a protective search, Officer Crapello could reasonably have confused the square, bulky mass of credit cards and drivers' licenses for a small handgun sheathed in a square, leather holster that masked its outlines.

B. Did the Police Conduct Amount to an Arrest?

Edwards argues that the police conduct in this case, especially by boxing in the suspects' vehicle and by the overall

display of force, transformed what began as a Terry stop into a de facto arrest. Further, Edwards argues that the police lacked probable cause to make an arrest and hence could not lawfully seize the items in the manila envelope pursuant to a search incident to arrest. Because we find that the police conduct in this case did not constitute an arrest, it is unnecessary for us to consider whether there was probable cause.

The Supreme Court has stated that, when police officers make an investigative stop, they may take such steps as are "reasonably necessary to protect their personal safety and to maintain the status quo." United States v. Hensley, 469 U.S. 221, 235, 105 S. Ct. 675, 684 (1985). "Under the Terry cases, the reasonableness of the intrusion is the touchstone, balancing the need of law enforcement officials against the burden on the affected citizens and considering the relation of the policeman's actions to his reason for stopping the suspect." Baker v. Monroe Township, No. 94-5069, 1995 WL 125470, at *4 (3d Cir. Mar. 22, 1995).

The vast majority of courts have held that police actions in blocking a suspect's vehicle and approaching with weapons ready, and even drawn, does not constitute an arrest per se. In United States v. White, 648 F.2d 29, 31 (D.C. Cir.), cert. denied, 454 U.S. 924, 102 S. Ct. 424 (1981), the court held that police officers' actions in blocking the defendant's car with their cruisers and approaching with guns drawn did not

amount to an arrest, but instead constituted a reasonable <u>Terry</u> stop in response to an anonymous tip concerning drug activity. <u>See also</u> <u>United States v. Perea</u>, 986 F.2d 633, 644 (2d Cir. 1993) (blocking suspect's car with three unmarked cars and approaching with weapons drawn was not an arrest); <u>United States v. Lechuga</u>, 925 F.2d 1035, 1041 (7th Cir. 1991) ("sandwiching" suspects' car with unmarked police cars and one officer approaching with his gun drawn was not an arrest); <u>United States v. Jackson</u>, 918 F.2d 236 (1st Cir. 1990) (blocking suspect's vehicle with two police cruisers, approaching with guns drawn, ordering suspects to put their hands on dashboard and subsequently frisking them did not constitute arrest); <u>United States v. Jones</u>, 759 F.2d 633, 637 (8th Cir.) (officers' actions in blocking vehicle, approaching with guns drawn and ordering suspect out of car was not an arrest), <u>cert. denied</u>, 474 U.S. 837, 106 S. Ct. 113 (1985).

While Edwards emphasizes the fact that he was not "free to leave" the scene, this does not mark the point where a <u>Terry</u> stop escalates into an arrest, since in neither a stop nor an arrest is a suspect free to leave.  As stated by the <u>Jones</u> court in considering at what point a stop becomes an arrest:

> The test is not, as argued by [defendant], whether a reasonable person would have felt free to leave under the circumstances:  That concern marks the line between a fourth amendment seizure of any degree and a consensual encounter which does not require any minimal objective justification.

759 F.2d at 637 (citing Immigration & Naturalization Serv. v. Delgado, 466 U.S. 210, 215, 104 S. Ct. 1758, 1762 (1984); United States v. Mendenhall, 446 U.S. 544, 553-54, 100 S. Ct. 1870, 1876-77 (1980)). Clearly, a Terry stop is a seizure, Terry, 392 U.S. at 16, 88 S. Ct. at 1877, and one seized is by definition not free to leave. Of course, we distinguish the length of time a suspect may be detained before the detention becomes a full-scale arrest, which we consider as a factor in evaluating the reasonableness of the detention as a whole in light of the circumstances. Baker, supra, 1995 WL 125470, at *4.

Applying these considerations to the facts before us, we hold that the officers' stop and detention of Edwards did not rise to the level of an arrest. The police acted reasonably in blocking the suspects' vehicle to conduct a brief investigation.

### III.

We conclude that appellant was not arrested until Officer Crapello opened the manila envelope and formally arrested both suspects. Moreover, because we find the police were within the bounds of Terry in stopping and frisking Edwards, we hold that the district court properly denied his motion to suppress the credit cards seized by police from the manila envelope in his possession. Accordingly, we will affirm.