91 F.3d 145
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marcus SPENCER, Defendant-Appellant.
 No. 94-4223.
 United States Court of Appeals, Sixth Circuit.
 July 17, 1996.
 
 Before: JONES, BOGGS, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Marcus Spencer appeals his conviction of intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and raises multiple issues relating to his arrest, trial and sentence. For the reasons that follow, we AFFIRM the decision of the trial court.
 
 I. FACTS AND PROCEDURAL BACKGROUND
 
 2
 On May 11, 1994, postal inspectors at Cleveland Hopkins Airport intercepted a package which contained a kilogram of cocaine. The cocaine was discovered following a positive indication from a drug dog and after officials obtained a search warrant. The package was resealed and an anticipatory search warrant was obtained for the Puritas Avenue apartment which was the package's mailing address.
 
 
 3
 The inspectors, in conjunction with officers of the Cleveland Police Department, after several unsuccessful attempts at controlled deliveries, left notices informing the inhabitants that the package would be available for pick-up at the post office.
 
 
 4
 The following morning, Marcus Spencer and Bobby Wilson drove to the Post Office, where postal inspectors and police officers were maintaining surveillance. Spencer and Wilson were driving a burgundy car, earlier connected with inhabitants of the Puritas apartment. Wilson signed for the parcel, left the Post Office, and threw the box onto the rear seat of the car. The officers and inspectors then blocked the car and, with guns drawn, ordered Spencer and Wilson out of the car. No rights were read to Spencer at this time, and, in response to two questions, he mis-identified himself and explained why he picked up the package. Spencer was then arrested and read his rights.
 
 
 5
 Shortly thereafter, law enforcement officials questioned the resident of the Puritas apartment, Samantha Burns. Although the officers stated that she could be criminally charged, she testified at trial that she did not feel threatened or scared by this statement. She stated that Spencer had informed her about a week before the package arrived that he was trying to get some cocaine in the mail, and that when she asked Spencer about the postal notices, he responded, "[S]ee, I told you it wasn't going to come to your house." Burns informed the officials that she lent Spencer her car, a burgundy Toyota Cressida, on the morning of the arrest and that Wilson was with him. Burns also told the officers that Spencer was staying with his cousin, Jackie Sherman; that Spencer cooked and cut crack cocaine at Sherman's apartment; and that she had seen cocaine there the previous week.
 
 
 6
 After the officers spoke with Burns, a search warrant was obtained for Sherman's apartment, where authorities seized various personal papers belonging to Spencer and $2,000 from Spencer's coat, which had been left at Sherman's apartment.
 
 
 7
 Spencer and Wilson were charged in a single indictment with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Spencer was convicted by a jury following a one-day trial in which he pleaded not guilty. The district court judge sentenced Spencer to 70 months in prison. This timely appeal followed.
 
 II. ANALYSIS
 
 8
 Spencer raises multiple issues, only one of which is worthy of discussion.
 
 A. Questioning During Investigative Stop
 
 9
 Spencer contends that in the absence of Miranda warnings, information obtained from the "custodial interrogation" that occurred between the time he was stopped and ordered from the car and the time of arrest should have been suppressed. Spencer relies on United States v. Jones, 846 F.2d 358 (6th Cir.1988), for the proposition that Miranda warnings had to be given prior to questioning when the defendant was surrounded by three police cars and prevented from leaving the scene. Spencer argues that because the officers approached the car with guns drawn and shouting orders, he was in custody and therefore Miranda warnings were required. We disagree.
 
 
 10
 Spencer's reliance on Jones is misplaced. The Jones analysis dealt with voluntary consent to search. As a part of a totality of the circumstances analysis, the majority noted that "the initial stop and blocking of Jones's car by three police cars established a custodial atmosphere and coercive environment." 846 F.2d at 361. The majority did not find that an arrest had actually taken place, but intimated that the officers created an "atmosphere" suggesting that consent was not voluntary. Such facts are not present in Spencer's case.
 
 
 11
 Our inquiry in this case must focus on whether the blocking of the car combined with the order to exit given at gunpoint elevated Spencer's situation from an investigative stop to an arrest. This inquiry requires us to focus on whether the totality of the circumstances gave rise to a justifiable fear for the officers' safety, thus justifying the display of force in making the stop.
 
 
 12
 "The mere use or display of force in making a stop will not necessarily transform a stop into an arrest if the surrounding circumstances give rise to a justifiable fear for personal safety." United States v. Tilmon, 19 F.3d 1221, 1226 (7th Cir.1994). "To require an officer to risk his life in order to make an investigatory stop would run contrary to the intent of Terry v. Ohio." United States v. Maslanka, 501 F.2d 208, 213 n. 10 (5th Cir.1974), cert. denied, 421 U.S. 912 (1975) (citation omitted). There are numerous cases holding that a blockade of a suspect's car with guns drawn does not constitute an arrest. See e.g., United States v. Edwards, 53 F.3d 616, 619 (3rd Cir.1995); United States v. Hardnett, 804 F.2d 353, 357 n. 1 (6th Cir.1986), cert. denied, 479 U.S. 1097 (1987).
 
 
 13
 We find that the officers and inspectors had an articulable suspicion to support stopping the car because they had just watched Wilson throw a package known to contain a kilo of cocaine onto the back seat. The law enforcement officials' blockade of the car and display of force were also justified to protect their personal safety, as they had just stopped two people who were reasonably believed to be engaged in drug trafficking, and drug traffickers are known often to carry weapons and use force when confronted. See United States v. Paulino, 935 F.2d 739, 754 (6th Cir.) ("This court has on several occasions recognized that firearms and ammunition are tools of the drug trafficking trade...."), cert. denied, 502 U.S. 1014 (1991). The fear for personal safety was clearly justified under these circumstances. See Edwards, 53 F.3d at 618 (finding officers reasonably feared for personal safety in apprehending two felons who had just engaged in bank fraud since "the perpetrators might have armed themselves to facilitate their escape if confronted."); Hardnett, 804 F.2d at 357 (finding blocking of vehicle and drawing of weapons justified where officers reasonably feared for safety based on reports that occupants were armed).
 
 
 14
 The facts of this case do not elevate the investigative stop to an arrest requiring Miranda warnings. Therefore, the motion to suppress the two answers given by Spencer regarding his identity and his presence at the post office was properly denied.
 
 B. Remaining Issues
 
 15
 Spencer contends that (1) there was insufficient basis upon which to obtain a search warrant for the package, (2) the officers lacked probable cause to arrest him without a warrant, (3) the search warrant for Sherman's apartment was not valid, (4) the prosecutor was guilty of misconduct that denied Spencer a fair trial, (5) the jury instructions were erroneous, (6) the government failed to turn over Jencks material, (7) the district court erred in denying Spencer's motion for acquittal, and (8) the district court erred in calculating his sentence. We have carefully reviewed the record and conclude that the district court's findings of fact in regard to each of these claimed errors is not clearly erroneous, that the district court correctly applied the law, and that none of these claims of error has any merit whatsoever.
 
 CONCLUSION
 
 16
 Accordingly, the judgment of the district court is AFFIRMED.