**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1296
_____

UNITED STATES OF AMERICA,
                                            Appellant

v.

MIGUEL REGALDO JIMINEZ

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-17-cr-00019-001)
District Judge: Honorable Petrese B. Tucker
_____

Argued December 11, 2018
_____

Before: SMITH, Chief Judge, McKEE and FISHER, *Circuit Judges*.

(Opinion Filed: April 18, 2019)
_____

OPINION[*]
_____

Robert E. Eckert, Jr.
Emily McKillip
Robert A. Zauzmer **[Argued]**
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

*Attorneys for Appellant*

Guy R. Sciolla
Laurence A. Narcisi, III **[Argued]**
Suite 1910
100 South Broad Street
Land Title Building
Philadelphia, PA 19110

*Attorneys for Appellee*

McKEE, *Circuit Judge*.

The government appeals the District Court's order granting the suppression motion filed by Miguel Jiminez. The court's ruling was based on its conclusions that police did not have probable cause to arrest Jiminez and that the arrest occurred when he was no longer free to leave the encounter with police. For the following reasons, we will reverse the suppression order and remand for further proceedings.

## I.

On November 18, 2016, Philadelphia police officers surveilled a Jeep that contained an aftermarket compartment, which are frequently used to conceal guns or drugs. They observed Miguel Jiminez[1] and Luis Baez approach the Jeep and enter it. After police observed them acting in a suspicious manner which we describe in more detail *infra*, the men drove off in separate cars. Police Officer Michael Vargas stopped

---

[1] The appellee's name appears in the record as both "Jimenez" and "Jiminez." We use the latter to be consistent with the docket entries.

2

the car driven by Baez and discovered cocaine and crystal methamphetamine in an aftermarket compartment similar to the one in the Jeep.[2]

After discovering the drugs, Officer Vargas communicated with Detective Lawrence Henry via police radio. Detective Henry informed Vargas that Jiminez had returned to the Jeep and had driven away in it. Detective Henry followed Jiminez in an unmarked car that was not equipped with police lights or sirens. As soon as Detective Henry turned on his headlights, Jiminez sped down an alleyway then fled on foot after Detective Henry identified himself as a police officer. The detective broadcast a description of the fleeing Jiminez over police radio. Soon thereafter, Detective Henry was informed that a person matching Jiminez's description was found hiding underneath a pickup truck parked at the curb. Detective Henry went to that location and positively identified Jiminez.

For the next hour and forty minutes, Jiminez sat handcuffed in the back of a police SUV while police waited for a drug-sniffing dog to come to the scene. An off-duty police officer had been shot elsewhere in the city shortly before Vargas called for a canine unit, and no dog was available to sniff the Jeep. When a dog from a neighboring department eventually arrived, officers had it sniff both the Jeep driven by Jimenez and the Ford Escape driven by Baez. It alerted to both, indicating that narcotics were present in both the Ford Escape and the Jeep. Officers thereafter obtained search warrants for the cars

---

[2] Based upon conflicting police testimony, the District Court refused to credit officers' testimony that Baez consented to the search of his car and ultimately suppressed the drugs. *United States v. Jimenez*, No. 17-019-1&2, 2018 WL 488037, at *3 (E.D. Pa. Jan. 19, 2018). The government does not appeal this decision.

3

and, approximately seven hours after Jiminez was placed in the police SUV, the cars were searched and narcotics were recovered from both.

Baez and Jiminez both moved to suppress the drugs recovered from their cars. Following an evidentiary hearing, the District Court granted both motions. The court granted Jiminez's motion because it concluded that he was arrested as soon as police handcuffed him. It explained that at that point Jiminez was "not free to leave" and therefore found that the interaction constituted an "arrest" that was not supported by probable cause.[3] The court stressed that police never saw Jiminez in the Ford Escape, nor did he ever exchange any items with Baez.

This appeal of the order granting Jiminez's suppression motion followed.

## II.[4]

The first step in any Fourth Amendment analysis is to determine when the officers' conduct implicated the defendant's constitutional rights.[5] A seizure occurs when officers "apply physical force to the person being seized or, where force is absent, have the person seized submit to a show of police authority."[6] Here, the initial seizure occurred when police removed Jiminez from underneath a pickup truck, placed him in handcuffs

---

[3] *Jimenez*, 2018 WL 488037, at *5 (quoting *United States v. Gonzalez-Gonzalez*, 432 F. Supp. 2d 253, 256 (D.P.R. 2006)).

[4] We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's factual findings for clear error and exercise plenary review over legal conclusions. *United States v. Tracey*, 597 F.3d 140, 146 (3d Cir. 2010).

[5] *Terry v. Ohio*, 392 U.S. 1, 16 (1968); *United States v. Valentine*, 232 F.3d 350, 358 (3d Cir. 2000) ("[T]here can be no Fourth Amendment violation until a seizure occurs.").

[6] *Valentine*, 232 F.3d.at 358 (citing *Cal. v. Hodari D*, 499 U.S. 621, 624–26 (1991)).

and put him in a police car. That is the first time that Jiminez "submit[ted] in any realistic sense to the officers' show of authority."[7]

Given the unique facts on this record, we need not decide whether this initial detention constituted a *Terry* stop or a full-scale arrest.[8] Similarly, we need not decide whether the one hour and forty minutes that Jiminez spent in the back of a police SUV escalated what may have initially been a *Terry* stop into a full-blown arrest.[9] As we noted at the outset, we believe police had probable cause to arrest Jiminez when they pulled him from his hiding place under the parked pickup truck.

We find that officers had probable cause to arrest Jiminez when he fled from Detective Henry on foot. At that point, officers had observed Jiminez in a car with an aftermarket compartment, which Officer Vargas knew could be used to store and

---

[7] *Id.* at 359.

[8] We do, however, disagree with the District Court's conclusion that this encounter amounted to an arrest simply because Jiminez was placed in handcuffs and thus not free to leave. *See United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995) (holding that the point where a suspect is no longer free to leave "does not mark the point where a *Terry* stop escalates into an arrest, since in neither a stop nor an arrest is a suspect free to leave"); *United States v. Johnson*, 592 F.3d 442, 448 (3d Cir. 2010) (holding that "placing a suspect in handcuffs while securing a location or conducting an investigation" does not "automatically transform an otherwise valid *Terry* stop into a full-blown arrest").

[9] *Compare United States v. Sharpe*, 470 U.S. 675, 685 (1985) ("Obviously, if an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop. . . [T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion."), *with Michigan v. Summers*, 452 U.S. 692, 700 (1981) (holding that an investigative detention "is not confined to the momentary, on-the-street detention accompanied by a frisk for weapons involved in *Terry*" and that courts may not impose any "rigid time limitation on *Terry* stops").

transport drugs. While in that car, Jiminez acted strangely—alternatively crawling under the dashboard and climbing back through the seats into the rear area of the car. He acted in concert with Baez, who also drove off in a car with an aftermarket compartment and had been pulled over with bags containing crystal methamphetamine and cocaine before the police detained Jiminez.[10] In addition, the men drove the Jeep in a circuitous route only to end up around the corner from where they started. His driving was consistent with someone trying to avoid surveillance or a car with a very faulty GPS unit. The police reasonably discounted the latter explanation.[11] Jiminez also drove extremely recklessly while being pursued by Officer Henry, travelling sixty to seventy miles per hour through residential alleys before ditching his car and fleeing on foot.[12] Under these circumstances,

---

[10] We may consider the drugs recovered from Baez's car even though they were ultimately suppressed. *See Alderman v. United States*, 394 U.S. 165, 174 (1969) (holding a person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed). Moreover, although the police could reasonably have viewed the meeting of Jiminez and Baez as an overt act in furtherance of a conspiracy, the existence of probable cause is even stronger here because no overt act is required to establish a conspiracy to distribute a controlled substance. *United States v. Shabani*, 513 U.S. 10, 15 (1994).

[11] Although it could be argued that Jiminez was merely driving around because he was lost, probable cause does not require that all innocent explanations be ruled out. Moreover, there is nothing to suggest that Jiminez was lost or unfamiliar with the neighborhood when he moved the Jeep. On the contrary, his subsequent conduct suggests the opposite.

[12] *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); *United States v. Laville*, 480 F.3d 187, 195 (3d Cir. 2007) (finding that it is "well established that where police officers reasonably suspect that an individual may be engaged in criminal activity, and the individual deliberately takes flight when the officers attempt to stop and question him, the officers generally no longer have mere reasonable suspicion, but probable cause").

officers had probable cause to arrest Jiminez for conspiracy to possess and/or distribute narcotics as well as for reckless driving. Once lawfully arrested, officers could legally search his car pursuant to the automobile exception to the warrant requirement.[13]

Probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."[14] As the name suggests, the concept of probable cause requires us to "deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."[15] It is established by a careful examination of the totality of the circumstances.[16] The circumstances here satisfied the probable cause requirement for an arrest.

### III.

Accordingly, we will assume that Jiminez's lengthy detention crossed the line from a *Terry* stop to a full scale arrest at some point during the time he sat handcuffed in the police car waiting an undetermined amount of time for a dog to arrive and sniff his Jeep. We nevertheless hold that the arrest was supported by probable cause. We will therefore reverse the District Court's order granting Jiminez's suppression motion and remand the case for further proceedings consistent with this opinion.

---

[13] *See Arizona v. Gant*, 556 U.S. 332, 347 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820-21 (1982) authorizes a search of any area of the vehicle in which the evidence might be found.").
[14] *Illinois v. Gates*, 462 U.S. 213, 232 (1983).
[15] *Id.* at 241 (citations omitted).
[16] *Id.*