**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1002

_____

CHRISTOPHER SANCHEZ,
Appellant

v.

UNITED STATES OF AMERICA

_____

On Appeal from the
United States District Court for the District of Delaware
(No. 1:19-cr-00028-001)
The Honorable Colm F. Connolly

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 22, 2021

Before: SMITH, *Chief Judge*, MATEY, and FISHER, *Circuit Judges*

(Opinion filed: July 7, 2021)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

Believing Christopher Sanchez lacked a driver's license, police pulled over his car where they observed a handgun on the floorboard. That led to an indictment under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and, after the District Court denied Sanchez's motion to suppress the firearm, a guilty plea. Sanchez appeals the District Court's decision on his motion, but finding no error, we will affirm.

## I. BACKGROUND

While on vehicular patrol, Detective Gaetan Robert MacNamara recognized Christopher Sanchez behind the wheel of an SUV. MacNamara and Sanchez had history, eight years of encounters. As a result, MacNamara regularly searched Sanchez's name in the Delaware Criminal Justice Information System (DELJIS) database, learning that Sanchez had a criminal record, but not a Delaware driver's license. And, two months earlier, a confidential informant told MacNamara that Sanchez had a black handgun and drove a grey Mitsubishi SUV.

Spying Sanchez in a vehicle matching the tip, MacNamara decided to stop him on suspicion of driving without a license. After requesting assistance, MacNamara and his colleagues pulled him over. Sanchez appeared to comply, stopping his vehicle as MacNamara pulled up behind. But Sanchez then accelerated forward before a second patrol car boxed him in. Quickly, MacNamara approached the driver's side and opened the door.

The stories briefly diverge: MacNamara testified that he immediately viewed a firearm on the driver's side floorboard. Sanchez says MacNamara yanked him out of the

SUV, searched and handcuffed him, and then, using a flashlight, saw the gun on the driver's side floorboard. But both agree a gun sat on the floorboard.

MacNamara took Sanchez into custody, and a grand jury returned an indictment under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After the District Court denied Sanchez's motion to suppress the handgun, Sanchez pleaded guilty and timely appealed.[1] And finding no error in the District Court's decision, we will affirm.

## II. DISCUSSION

Sanchez challenges the denial of the motion to suppress on three grounds: first, a lack of reasonable suspicion to begin the traffic stop; second, that the stop was an arrest requiring probable cause; and third, that the firearm was not in "plain view." We consider each, finding none persuasive.

## A. The Stop Was Supported by Reasonable Suspicion

Traffic stops require reasonable suspicion that a criminal violation has occurred. *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006). Reasonably suspecting a driver lacks a license is enough, *Delaware v. Prouse*, 440 U.S. 648, 663 (1979), and officers may reach that suspicion by relying "on probabilities" combined with "database

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's factual findings for clear error and exercise plenary review over questions of law. *United States v. Green*, 897 F.3d 173, 178 (3d Cir. 2018). We can affirm on any ground supported by the record. *Id.*

information and commonsense judgments[.]" *Kansas v. Glover*, 140 S. Ct. 1183, 1190 (2020).

That is what MacNamara did here. MacNamara's search of the DELJIS database showed Sanchez lacked a license (a result matching years of searches producing the same result). *See, e.g.*, *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004) (reasonable suspicion supported traffic stop for unlicensed driving based on 22-day-old database search). As the District Court correctly concluded, that satisfied the "minimal level of objective justification" for the traffic stop. (App. at 17, quoting *Delfin-Colina*, 464 F.3d at 396).

Taking a different route, Sanchez also argues that MacNamara lacked reasonable suspicion because DELJIS does not show licensure from every state. But reasonable suspicion does not require "'rul[ing] out the possibility of innocent conduct.'" *United States v. Henley*, 941 F.3d 646, 653 (3d Cir. 2019) (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)). Sanchez also argues that MacNamara should have confirmed Sanchez lacked a license before opening the driver's side door. Not so, because the interactions during the stop are irrelevant to whether the stop was "justified at its inception." *Glover*, 140 S. Ct. at 1191 (quoting *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177, 185 (2004)). And as explained below, Sanchez's conduct justified MacNamara's safety concerns.

**B.     The Traffic Stop Was Not an Arrest**

Sanchez argues the traffic stop ripened into an arrest either when the patrol car hemmed in his vehicle, or when MacNamara opened the driver's side door with a holstered

gun and blocked Sanchez's movement. We disagree.[2] "[P]olice actions in blocking a suspect's vehicle and approaching with weapons ready, and even drawn, does not constitute an arrest." *United States v. Johnson*, 592 F.3d 442, 448 (3d Cir. 2010) (internal quotation marks and citation omitted). That is because "when police officers make an investigative stop, they may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995) (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)).

Accepting Sanchez's version of events, the actions at the scene were reasonable. MacNamara knew about Sanchez's prior conviction, history of resisting arrest, and the tip that Sanchez might be armed. And Sanchez does not contest that his vehicle drove several feet forward after initially stopping. To "protect their personal safety," *id.*, it was reasonable for police to hem in Sanchez's vehicle to prevent escape, and then "take necessary measures to determine whether [Sanchez was] in fact carrying a weapon and to neutralize the threat of physical harm." *Terry v. Ohio*, 392 U.S. 1, 24 (1968). Under the circumstances, removing and handcuffing Sanchez was a reasonable, necessary measure. *Johnson*, 592 F.3d at 448 ("placing a suspect in handcuffs while securing a location or

---

[2] And though we need not address whether MacNamara had probable cause, Sanchez's attempted escape may have justified a warrantless arrest. *See* 21 Del. Ch. § 4103(b) (a driver signaled to stop a vehicle who "increases speed or extinguishes the vehicle's lights and attempts to flee or elude the police officer shall be guilty of a class G felony"); 21 Del. C. § 701(a)(1) (authorizing warrantless arrests for traffic law violations committed in officer's presence).

conducting an investigation" does not "automatically transform an otherwise-valid *Terry* stop into a full-blown arrest").

## C.     The Gun Sat in Plain View

Evidence may be seized without a warrant if 1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, 2) the item's incriminating character was immediately apparent, and 3) the officer had a lawful right to physically access the object itself. *Horton v. California*, 496 U.S. 128, 136–37 (1990); *United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994).

Sanchez argues that the first step is not satisfied[3] because the police lacked reasonable suspicion (and thus probable cause) to stop him. But we see reasonable suspicion for the reasons above, so this derivative argument fails.[4]

### III. CONCLUSION

We will affirm the District Court's denial of Sanchez's motion to suppress.

---

[3] To be sure, the second and third factors are satisfied. MacNamara's knowledge that Sanchez had a prior conviction made the "incriminating character" of the gun immediately apparent. The police thus had "probable cause to believe that the vehicle contain[ed] evidence of a crime" sufficient to search it without a warrant. *United States v. Donahue*, 764 F.3d 293, 299–300 (3d Cir. 2014) (internal quotation marks and citation omitted).

[4] If Sanchez argues MacNamara unlawfully shined the flashlight towards the open door, that argument fails as well. *Texas v. Brown*, 460 U.S. 730, 739–40 (1983) (shining a light to illuminate a car's interior is not a Fourth Amendment search).