**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2511
_____

UNITED STATES OF AMERICA

v.

STEVEN PENNYCOOKE,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2:20-cr-00227-001)
District Judge:  Honorable John M. Gallagher
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 12, 2025
_____

Before:  CHAGARES, <u>Chief Judge</u>, PORTER and ROTH, <u>Circuit Judges</u>

(Filed: March 18, 2026)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

A jury found Steven Pennycooke guilty of being a felon in possession of a firearm. Before trial, he moved to suppress the gun that formed the basis of his conviction. The District Court denied the motion to suppress. We will affirm.

## I.[1]

Pennycooke claimed that the gun was retrieved after he was illegally seized in violation of the Fourth Amendment. The District Court held a hearing on the suppression motion, at which two Philadelphia police officers, Edwin Perez ("Edwin") and Arcenio Perez ("Arcenio"), and Pennycooke testified.

The District Court found that, on June 2, 2020, shortly before 11:00 p.m., Edwin and Arcenio were working the "looting detail,"[2] Appendix ("App.") 85, when they responded to an anonymous report that two Black men — one wearing a white t-shirt over his head and the other wearing a black hoodie — were loading an ATM onto a cart on the 4100 block of Viola Street in Philadelphia.

The officers promptly arrived on the scene by patrol car and encountered Pennycooke and his brother, Shawn Collins, on a block empty of other pedestrians, about 100 feet away from an ATM on a cart in the street, partially covered by a tarp. Collins was wearing a dark long-sleeved shirt and had a ski mask on his head, although neither

---

[1] Because we write for the parties, we recite only facts pertinent to our decision.
[2] In June 2020, the city of Philadelphia was experiencing a period of widespread looting and rioting, and an 8:30 p.m. citywide curfew was in place.

2

man had a white t-shirt on his head. From inside the patrol car, Edwin asked the two men about the ATM in the street. Pennycooke responded, denying knowledge of it.

According to the officers, Pennycooke then put his right hand to his waistband, removed a heavy object, tossed it into a nearby car, and closed the car door. Edwin believed the object to be a gun and alerted his partner accordingly. The officers quickly exited their patrol car with weapons drawn and approached Pennycooke and Collins. Edwin observed that, while Pennycooke was raising his arms, he used the key fob in his hand to lock the car.[3]

The officers directed both men to show their hands and put their arms up against a wall. They then holstered their weapons and waited for backup to arrive. As Edwin passed Pennycooke to a backup officer to be placed in a patrol car, he looked in the window of the nearby car and observed a gun in plain view on the floor. Arcenio meanwhile frisked Collins and found a gun in his waistband; he seized the gun and handcuffed Collins.[4]

---

[3] In contrast to the testimony of the officers, Pennycooke testified that he was outside of a friend's house smoking a cigarette when the police stopped him. According to Pennycooke, Collins happened to be nearby, but they were not together, and Pennycooke only noticed Collins after the police arrived. Pennycooke testified that when the officers asked about the ATM, he had no idea what they were talking about. According to his account, when he looked down the street and saw the ATM, the officers unexpectedly jumped out of their patrol car with guns drawn. The officers took Pennycooke's car keys from him, searched his car, found a gun, and put it in the car's back seat. The District Court found that Pennycooke's account was less credible than that of the officers.

[4] Collins ultimately pleaded guilty to being a felon in illegal possession of a gun and was sentenced to 18 months' imprisonment. He did not appeal. See United States v. Collins, E.D. Pa. No. 2:20-cr-00228-001.

After considering the evidence, the District Court denied Pennycooke's motion to suppress, concluding that his Fourth Amendment rights had not been violated. A jury later found him guilty of the firearm offense. The District Court sentenced him to a 57-month term of imprisonment, which was later reduced to 51 months. Pennycooke challenges only the denial of the suppression motion in this timely appeal.

## II.[5]

### A.

A brief investigatory stop without a warrant is permissible under the Fourth Amendment so long as there is "a reasonable, articulable suspicion that criminal activity is afoot." United States v. Lowe, 791 F.3d 424, 430 (3d Cir. 2015) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). To determine whether such a stop is constitutional, we first determine the moment that a seizure occurred — either when an officer physically restrains the defendant's movement or when the defendant submits to a show of authority. Id. We then consider the facts known to the officer at the time of the seizure to determine whether it was justified by articulable facts giving rise to the reasonable suspicion that the defendant was engaged in criminal activity. Id.

The District Court determined that Pennycooke was seized when, in response to the officers' exiting the patrol car with guns drawn, he complied with their order to show his hands. See United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006). Neither party

---

[5] The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291. We apply a mixed standard of review to the denial of a motion to suppress evidence, assessing factual findings for clear error and issues of law de novo. United States v. Jarmon, 14 F.4th 268, 271 (3d Cir. 2021).

4

disputes that determination. Pennycooke instead argues that the District Court erred by finding the seizure was supported by facts giving rise to reasonable suspicion. We disagree.

A number of facts contributed to a reasonable suspicion that criminal activity was afoot. Consistent with and contemporaneous to the anonymous tip, the officers encountered Pennycooke and Collins alone on the 4100 block of Viola Street, within the vicinity of the ATM the officers had been sent to investigate. Pennycooke and Collins were in violation of the citywide curfew in a high-crime area of the city, and Collins was wearing a long-sleeved black shirt and a ski mask on his head, despite the evening's heat. Pennycooke responded evasively to the officers' questions about the nearby ATM. Most importantly, during the questions, Pennycooke removed a heavy object from his waistband and surreptitiously threw it in the back of his car and locked it — and Edwin, an experienced officer, immediately identified that object as a gun. The totality of these circumstances persuades us that the District Court correctly determined that a reasonable, trained officer in the shoes of Edwin and Arcenio Perez could articulate valid and specific reasons to justify Pennycooke's seizure. See United States v. McCants, 952 F.3d 416, 422 (3d Cir. 2020).

Pennycooke contends that the throwing motion did not happen at all or, if it did, it occurred after the seizure had already taken place. These are challenges to the District Court's findings of fact crediting the officers over Pennycooke. His unsupported assertions on appeal do not establish that the District Court's findings are clearly erroneous. See Jarmon, 14 F.4th at 271. Pennycooke also claims that the anonymous tip

was too vague, that he "was not close to the [ATM] or otherwise connected to it," and that reasonable suspicion did not arise until after he was seized. Pennycooke Br. 16. We are unpersuaded. The District Court correctly determined that the totality of the circumstances gave rise to reasonable suspicion, permitting the officers to conduct the warrantless investigative stop.

B.

Pennycooke next argues that, even if the initial stop was valid, there was no probable cause for his arrest. He claims that he was arrested when he was handcuffed, but that Edwin did not see the gun until later.

The District Court correctly rejected this argument. Pennycooke was not necessarily arrested simply because he was handcuffed. Rather, the handcuffing was a reasonable and direct response to Pennycooke tossing the gun in the back of his car. Edwin, having seen what he believed was a weapon, acted for safety reasons in the course of the investigatory stop. See United States v. Edwards, 53 F.3d 616, 619 (3d Cir. 1995) (holding that an investigative stop may include steps necessary to maintain safety and protect the status quo). Edwin later saw the gun in plain view in Pennycooke's car and determined that Pennycooke lacked a license to carry it, which gave rise to the probable cause for the arrest. See Horton v. California, 496 U.S. 128, 130 (1990) (holding that the Fourth Amendment does not prohibit the warrantless seizure of crime evidence in plain view).

III.

For the foregoing reasons, we will affirm the District Court's order denying the motion to suppress evidence.