NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1650
_____

UNITED STATES OF AMERICA

v.

ROGELIO LOPEZ,
Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-06-cr-00199-024)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit LAR 34.1(a)
July 14, 2011

Before:  RENDELL, SMITH and ROTH, Circuit Judges.

(Opinion Filed:  August 10, 2011)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Rogelio Lopez appeals the District Court's denial of his motion to suppress cocaine and cellular phones seized during an investigatory stop. For the reasons set forth below, we will affirm.[1]

## I.

The following facts were developed at the District Court hearing on the motion to suppress. The District Court, in its Memorandum opinion denying Lopez's motion to suppress, provided a comprehensive account of its findings of fact. *See United States v. Lopez*, 2009 WL 1140096 (M.D. Pa. Apr. 28, 2009). Because we write solely for the benefit of the parties, we refer only to those facts pertinent to our discussion.

At around 10:45 pm on May 26, 2008, Officers William Fasan and Peter Kochanny were patrolling the area around Polaski Road in Chicago, Illinois when they observed a black Pontiac Grand Am and a green minivan parked near one another in a remote section of a Burger King parking lot. They observed an interaction among appellant Rogelio Lopez and two other men, Martin Lopez[2] and Luiz Zuniga,[3] in which the three men glanced around to determine if anyone was watching, conversed briefly, then brought their hands together as if they were passing a small article between them.

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

[2] The record contains no evidence of a familial relationship between Rogelio and Martin. We will refer to them by their first names to avoid confusion.

[3] Martin Lopez was tried with Rogelio as a co-defendant, but he is not a party to this appeal. Zuniga was ultimately released from custody without any charges filed against him.

The police officers could not see what the men exchanged, but, based on their experience and training, they suspected that the men had conducted a hand-to-hand drug transaction.

When the officers drove towards the three men to investigate the situation, they noticed that the men had actually exchanged car keys, not narcotics. This observation, combined with their knowledge that the area has a reputation for hosting large-scale drug transactions, made them suspect that the men were engaged in a "car switch," which occurs when two traffickers meet at a predetermined location and swap vehicles, one of which contains contraband. Such transactions, which are typically used to transport large quantities of drugs, allow the participants to exchange products quickly and prevent them from handling controlled substances in public view.

The officers conducted an investigatory stop based on their suspicion that the three men had conducted a car-switch drug transaction. They verified that vehicle keys had been swapped and requested identification from all three individuals. After concluding that defendants' conduct bore indicia of drug trafficking, and based on their knowledge that drug dealers often possess firearms in connection with trafficking activity, the officers conducted a preliminary pat-down search of the suspects' outer clothing. Officer Kohanny removed a phone clipped to Martin's belt, and Officer Fasan discovered at least two bulky items[4] in Rogelio's pockets that he removed and identified as cellular phones. In total, the officers removed about six or seven phones from the three suspects, which they confiscated because, in the officers' experience, arrestees sometimes carry blunt

---

[4] As the District Court noted, Officer Fasan testified that Rogelio was carrying multiple cellular phones but did not specify the exact number.

3

objects similar in size and shape to cell phones that can be used to injure an officer and phones can be used to conceal knives or other dangerous implements.

The officers then questioned the three men about the car switch, and Rogelio stated that he was borrowing the minivan from Martin to take his family on vacation. The explanation further aroused the officers' suspicion, because the car switch took place late at night and at the end of a holiday weekend. Based on their heightened suspicion, the officers requested and received Martin and Rogelio's oral consent to search the minivan. Though he consented to the search, Rogelio informed the officers that he did not own the van.

The officers' search of the vehicle discovered a black brick containing narcotics. The three men were then arrested and read their *Miranda* rights, which both Martin and Rogelio indicated that they understood.[5] Police ultimately seized a total of ten kilograms of cocaine from the minivan.

Rogelio, along with eight other defendants, was subsequently charged with conspiracy to distribute and possession with intent to distribute cocaine, crack cocaine, and marijuana in violation of 21 U.S.C. § 846; distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); and various criminal forfeitures. In addition, he was charged along with one other co-defendant of distribution and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1).[6] His

---

[5] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[6] Not all the charges against Rogelio stemmed directly from the drugs seized during his arrest. In the spring of 2008, Rogelio was also the subject of a Drug Enforcement

4

case was transferred from the Northern District of Illinois to the Middle District of Pennsylvania, where he was tried.

Prior to trial, Rogelio filed a motion to suppress evidence seized during his arrest. The District Court, after holding a suppression hearing, denied Rogelio's motion in a memorandum and order filed on April 28, 2009.[7] The Court concluded that Officers Fasan and Kochanny properly stopped defendants for the purpose of investigating suspected criminal activity; that the officers properly removed defendants' cell phones during the preliminary pat-down search; that defendants granted consent to search the minivan; and that Rogelio's consent was valid despite the fact that the minivan was not his.[8] *Lopez*, 2009 WL 1140096, at \*4-\*8.

## II.

"We review the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and we exercise plenary review over questions of law." *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006). We note that "assessments of credibility by the trial court are entitled to great deference at the appellate level." *United*

---

Agency ("DEA") investigation led by Special Agent Mark O'Donnell, which was unrelated to his arrest. Agent O'Donnell's investigation included the use of a confidential informant who had given him information regarding prior drug dealings with the defendant. Agent O'Donnell testified at the suppression hearing, and the informant testified at trial as a government witness.

[7] A jury trial of Rogelio and three co-defendants ensued, where the jury found Rogelio guilty of the conspiracy and substantive cocaine counts and not guilty of the marijuana distribution account.

[8] Martin also challenged the admissibility of a statement he made once in custody, and the District Court found that the statement was admissible.

*States v. Brothers*, 75 F.3d 845, 853 (3d Cir. 1996). "This review is more deferential with respect to determinations about the credibility of witnesses, and when the district court's decision is based on testimony that is coherent and plausible, not internally inconsistent and not contradicted by external evidence, there can almost never be a finding of clear error." *United States v. Igbonwa*, 120 F.3d 437, 441 (3d Cir. 1997).

Rogelio argues that the officers engaged in a series of unlawful actions, each of which requires the suppression of the physical evidence found in the minivan and on Rogelio's person. He claims that the officers did not have a lawful basis to perform an investigatory stop or to frisk him and that the scope of their search of his person was too broad. With regard to the search of the minivan, he claims that his consent to the search was nullified by the fact that he and Martin had been unlawfully seized at the time and that the officers lacked probable cause to search the automobile. Finally, he argues that the evidence seized from the minivan, which belonged to Martin, should not have been admissible against him because he never had dominion or control over the vehicle or the drugs.

*Investigatory Stop and Frisk*

Police may perform an investigatory stop of a person when they have a reasonable, articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Reasonable suspicion is a "less demanding standard than probable cause . . . in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). In determining the legality of a *Terry* stop, we consider the totality of the circumstances, *United States v.*

6

*Robertson*, 305 F.3d 164, 167 (3d Cir. 2002), and, in so doing, "give considerable deference to police officers' determinations of reasonable suspicion." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (internal citation omitted).

Given this standard, the District Court correctly determined that reasonable suspicion supported the investigatory detention of Rogelio. The officers, while working a nighttime shift, observed Martin, Rogelio, and Zuniga exit their vehicles in an isolated section of an otherwise empty parking lot. The men walked toward each other while continually surveying their surroundings, and the officers saw them exchange a small article without first shaking hands. The officers knew that the area around the parking was a high-crime area, and they suspected that they had just witnessed a hand-to-hand narcotics transaction.

The District Court did not err in holding that these circumstances gave rise to an inference of drug-related activity and, thus, that the officers properly detained defendants for the purpose of conducting a *Terry* stop. Though presence in a high-crime area and the lateness of the hour do not, without more, give rise to reasonable suspicion, they may be considered in the totality of the circumstances. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *United States v. Whitfield*, 634 F.3d 741, 744 (3d Cir. 2010); *United States v. Nelson*, 284 F.3d 472, 483 (3d Cir. 2002). These factors, when combined with the behavior that the officers observed, amount to a totality of circumstances that supports the officers' reasonable suspicion. *See United States v. Paulette*, 457 F.3d 601, 602, 606 (6th Cir. 2006) (holding that officers had reasonable suspicion that defendant in high

7

drug-crime area was engaged in criminal activity based on his hand movements, which were consistent with a hand-to-hand drug transaction).

In objecting to the District Court's ruling that the officers had reasonable suspicion, Rogelio also argues that the officers' testimony was confusing and contradictory regarding what they observed when they arrived at the scene. The District Court found that the officers' account of the events that took place on May 26, 2008 was credible. Our review of the testimony from the evidentiary hearing indicates that the officers' testimony had sufficient indicia of reliability to withstand clear error review. *See United States v. Givan*, 320 F.3d 452, 464 (3d Cir. 2003). Accordingly, we defer to the District Court's factual findings and, in light of those facts, hold that reasonable suspicion supported the investigatory stop of Rogelio in the parking lot.

We also agree with the District Court that the officers acted appropriately in frisking Rogelio after the investigatory stop and in removing the cell phones from his person. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a pat-down search "to determine whether the person is in fact carrying a weapon." *Terry*, 392 U.S. at 24.[9] If the officer discovers

---

[9] *See also United States v. Yamba*, 506 F.3d 251, 255-56 (3d Cir. 2007) (holding that officer was justified in patting down suspect during a stop whom he believed to be armed and presently dangerous); *United States v. Fryer*, 974 F.2d 813, 819 (7th Cir. 1992) (noting that officers' pat-down search of both driver and passenger was justified when, during a routine traffic stop, "the officer observed furtive movements between the driver and passenger, as if they were passing something between them"); *United States v. Colin*, 928 F.2d 676, 678 (5th Cir. 1991) (upholding the frisk of a passenger where the officer observed the passenger stoop down and move from side to side).

8

contraband during the course of this search, he may seize it without a warrant. *See Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) ("If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons . . . .").

As the District Court held, reasonable suspicion supported the pat-down search in which Officers Fasan and Kochanny removed defendants' cellular phones. Upon seeing the officers approach, Rogelio, Martin, and Zuniga hurried toward opposite vehicles from those in which they had arrived. When the officers got closer to the suspects, they noticed that the suspects had exchanged vehicle keys rather than contraband. At this point, the officers suspected that the men had conducted a car-switch transaction, rather than a hand-to-hand sale. We agree with the District Court that, based on the officers' experience with and knowledge of car-switch transactions – which often involve large amounts of drugs and armed participants – it was reasonable for the officers to believe that the suspects may have been armed and dangerous. *See United States v. Crippen*, 627 F.3d 1056, 1063 (8th Cir. 2010) ("A suspicion on the part of police that a person is involved in a drug transaction supports a reasonable belief that the person may be armed and dangerous because weapons and violence are frequently associated with drug transactions."); *United States v. Garcia*, 459 F.3d 1059, 1064 (10th Cir. 2006) ("[A] connection with drug transactions can support a reasonable suspicion that a suspect is armed and dangerous."). Further, as the District Court ruled, it was reasonable for Officer Fasan, out of concern for his safety, to remove the multiple cell phones he felt

9

during his frisk of Rogelio from Rogelio's pockets. *See United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995).

*Consent*

Rogelio next argues that Martin's and his consent to the automobile search was not valid. Martin, Rogelio claims, did not voluntarily consent to the search and, if he did, that consent was rendered invalid by the prior unlawful actions of the police. Rogelio's own consent was invalid because he did not have a significant possessory interest in Martin's vehicle to consent to the search.

The District Court found that Martin and Rogelio both voluntarily consented to the search of the minivan, a factual determination that we review for clear error. *See Givan*, 320 F.3d 452, 459 (3d Cir. 2003). This finding is supported by facts in the record and is not clearly erroneous. Officers Fasan and Kochanny, both deemed credible witnesses by the District Court, testified that Martin and Rogelio orally consented to the officers' search of the minivan. Although Martin testified that neither officer asked for his consent, the District Court credited the officers' account over Martin's, and we defer to its credibility determination. *See Brothers*, 75 F.3d at 853. Because we find the District Court's holding that both Martin and Rogelio consented to the search of minivan to be reasonable, we need not reach the question of whether Rogelio could have consented to the search had Martin objected to it.[10]

---

[10] In addressing consent, the District Court also ruled, in the alternative, that the officers possessed probable cause to search the minivan notwithstanding defendants' consent. Rogelio challenges this conclusion, arguing that the circumstances the officers had observed at this point did not give rise to probable cause to search the vehicle.

*Dominion or Control*

Lastly, Rogelio argues that the evidence seized from Martin's minivan should have been inadmissible against Rogelio because Rogelio never had dominion or control over the automobile or the contraband seized from inside of it. The District Court construed this argument as a challenge to the officers' probable cause for Rogelio's arrest – i.e., because, due to Rogelio's lack of dominion or control over Martin's vehicle and the cocaine in it, the officers had no reason to link Rogelio with the cocaine and, thus, lacked probable cause for Rogelio's arrest. The Court rejected that argument, explaining that, in the context of contraband seizures, the arresting officer may arrest any individual engaged in a common enterprise with the item. *Lopez*, 2009 WL 1140096, at *7 (citing *Maryland v. Pringle*, 540 U.S. 366, 370 (2003)). Here, the Court said, the officers had probable cause to believe that the three men were participating in a common scheme with respect to the cocaine seized from Martin's minivan – they met under conditions that suggested a car-switch transaction; Rogelio had the keys to the minivan and was hurrying towards it when the officers arrived; and Rogelio later admitted that he was borrowing the minivan, allegedly for a family vacation. Thus, the Court concluded, the officers were justified in arresting Rogelio for trafficking. *Id.* at *8.[11]

Because we find the District Court's holding that Rogelio and Martin voluntarily consented to the automobile search to be reasonable, we need not reach the question of whether the officers had probable cause to search the minivan.

[11] The Government contends that Rogelio, and the District Court, mischaracterized the dominion and control argument as a suppression issue when in fact it is an issue of Rule 401 evidentiary relevancy. *See* Fed. R. Evid. 401. We agree that Rogelio does not precisely identify what he is objecting to with his dominion and control argument – the

The District Court did not err in holding that the officers possessed probable cause for Rogelio's arrest based on the circumstances known at the time they placed him in custody. The fact that Rogelio did not own the car in which the drugs were found does not vitiate the officers' possession of probable cause.[12]

### III.

For the foregoing reasons, we will affirm the District Court's denial of Rogelio's motion to suppress.

---

seized cocaine's connection to him so as to justify a finding of probable cause for his arrest or its connection to him in a broader sense, so as to make his guilt more likely. However, because we believe the District Court's interpretation to be reasonable, we will treat Rogelio's dominion and control argument in the same way the Court did – as a suppression issue.

[12] Rogelio also argues that the Court's decision to admit the allegedly illegally seized evidence was not harmless error. Because we find that the Court's admission of this evidence was not error at all, we need not reach this argument.